**UNITED STATES of America, Plaintiff,**

v.

**BCCI HOLDINGS (LUXEMBOURG), S.A., Bank of Credit and Commerce International, S.A., Bank of Credit and Commerce International (Overseas) Ltd, and International Credit and Investment Company (Overseas) Limited, Defendants.**

**Misc. Action No. 96–0367 (JHG).**

United States District Court, District of Columbia.

Aug. 26, 1997.

As Amended Sept. 16, 1997.

Herbert J. Miller, Martin D. Minsker, William H. Jeffress, Jr., Timothy J. Preso, Washington, DC, on the brief from Miller Cassidy, for Clifford & Altman.

Stephen J. Brogan, Mary Ellen Powers, David E. Powers, David E. Miller, Washington, DC, on the joint brief of the Trustee and First America.

Jones, Day, Reavis & Pogue, Washington, DC, for First American Corp. and First American Bankshares, Inc.

Sol Neil Corbin, Corbin, Silverman & Sanseverino, L.L.P., New York City, for Harry W. Albright Jr. Trustee.

## *In re* Application for Relief from Trustee's First Distribution Plan Proposed Pursuant to the 1994 Procedural Order in *United States v. BCCI Holdings*, 91–CR–0655 (JHG)

### *ORDER*

JOYCE HENS GREEN, District Judge.

Presently before the Court is the Application filed by Clark M. Clifford and Robert A. Altman pursuant to Local Rule 307.1 ("Clifford & Altman's App." or the "Application") [Docket No. 1], seeking relief from the Trustee's First Distribution Plan, which was proposed pursuant to the Procedural Order entered by this Court in 1994, *see* Order of Dec. 21, 1994, *United States v. BCCI Holdings (Luxembourg), S.A., et al.,* No. 91–CR–0655 (JHG) (D.D.C.) [BCCI Docket No. 1328]. Except with respect to the property sought now by Messrs. Clark M. Clifford ("Clifford") and Robert A. Altman ("Altman") in their Application, the Court has approved the Trustee's First Distribution Plan. *See* Order of Nov. 25, 1996 [BCCI Docket No. 1766], as amended by Order of Dec. 18, 1996 [BCCI

Docket No. 1781]. While the Trustee has proposed transferring the specific property that Clifford and Altman seek into the Court Registry Investment System ("CRIS"), to be held in escrow pending resolution of the disputed issues regarding ownership, the Court has ordered that no such transfer be effected until Clifford and Altman were provided yet another opportunity to be heard. Order of December 18, 1996; *see* Order of Aug. 22, 1996, *United States v. BCCI Holdings,* No. 91–CR–0655 (JHG) (D.D.C.) [BCCI Docket No. 1721], *ordering,* inter alia, *that motion be filed as In re Motion of Clifford & Altman,* Misc. A. No. 96–0266 (holding, among other things, that Clifford and Altman waived any objection to the Procedural Order by failing to object prior to or at the public hearing on December 19, 1994), *appealed,* Sept. 20, 1996, *oral argument set for* Oct. 23, 1997 (D.C.Cir.).

Upon consideration of Clifford & Altman's Application, the joint opposition of the Trustee and First American Corporation ("FAC") and First American Bankshares ("FAB") (hereinafter FAB and FAC will be referred to collectively as "First American") [Docket No. 4], the opposition of the United States [filed in the BCCI Docket as No. 1799], the opposition of the Court–Appointed Fiduciaries for BCCI Holdings, *et al.* [Docket No. 17], Clifford & Altman's Reply [Docket No. 14], the joint surreply of the Trustee and First American [Docket No. 18], Clifford & Altman's Response to the Surreply [Docket No. 19] and the exhibits attached to these filings, the motion will be denied.[1]

---

**1.** Because of the factual complexity of this matter and the highly unusual circumstances of both the criminal and civil litigation involving, among many others, BCCI and Clifford & Altman, this Court allowed both sides to exceed the page limits set by the Local Rules, and the Court allowed both sides to file additional responses not normally allowed by the Local Rules. Over 210 pages of pleadings and over 235 exhibits were filed in contesting this issue, which is closely related to a series of complicated civil cases presently before this Court. *See First American v. Sheikh Zayed, et al.,* 948 F.Supp. 1107 (D.D.C. 1996) (in discovery); *BCCI Holdings, et al., v. Clifford, et al.,* 964 F.Supp. 468 (D.D.C.1997) (in discovery); *Clifford, et al., v. First American,* No. 95–0877(JHG), 1996 WL 707022 (D.D.C.1996) (in discovery); *BCCI Holdings, et al., v. Khalil, et al.,* No. 95–1252(JHG) (D.D.C.) (in discovery);

*Clifford, et al., v. First American,* No. 95–1689(JHG) (indemnification suit stayed by consent of the parties).

Also active is the criminal case involving BCCI as a corporate defendant, *United States v. BCCI Holdings,* No. 91–CR–0655 (JHG) (D.D.C.), which is the basis for this Application under Local Rule 307.1. Additionally, briefing has recently been completed on the third-party forfeiture petitions filed under 18 U.S.C. § 1963(*l*) which followed the Fifth Round of Forfeiture of BCCI's assets, *see* Fifth Order of Forfeiture (filed Sept. 20, 1996); Order of Feb. 6, 1997, and, today (August 26, 1997), the Court issued a series of opinions ruling on each of the government's motions to dismiss the Fifth Round petitions. Moreover, the criminal case remains open against two individual BCCI defendants, Agha

In their Application, Clifford and Altman request that the Court order the Trustee to distribute to them $3.5 million of proceeds of stock to which they are the registered shareholders and $372,000 of proceeds payable for debentures, plus interest, "which the [T]rustee has refused to pay, in contravention of the applicable orders outstanding in *BCCI Holdings*." Clifford & Altman's App. at 2. Their request stems from claims they have asserted to funds that are currently in the Trustee's possession on account of the liquidation of Credit and Commerce American Holdings, N.V. ("CCAH") and its former subsidiaries. The claims arise from two debentures issued by CCAH, one each to Clifford and Altman in December 1990, and from their status as "record shareholders" of CCAH stock (amounting to approximately 1.243% of the CCAH liquidation proceeds). Such claims are currently among the factual disputes in proceedings before the Board of Governors of the Federal Reserve and this Court. *See infra.*

By way of background, Applicant Clifford was the Chairman of First American from 1981 to 1991 and the Chairman of FAB from 1982 to 1991. He was also a Managing Director of both CCAH and Credit and Commerce American Investment ("CCAI"). Applicant Altman was President and a Director of First American from 1981 to 1991, and he was a member of the Board of Directors of FAB and a Managing Director of both CCAI and CCAH.

Through the use of numerous nominees, BCCI[2] owned a controlling interest in CCAH, which is a Netherlands Antilles corporation and a bank holding company within the meaning of the Bank Holding Company Act, 12 U.S.C. § 1841 *et seq.* CCAI, a wholly owned subsidiary of CCAH, is also a Netherlands Antilles corporation and a bank holding company. CCAH and CCAI were formed in 1978 to acquire control and ownership of Financial General Bankshares, a bank holding company that subsequently was renamed and became FAB, which was wholly owned by FAC.

Clifford was the registered shareholder to 2,395 shares of CCAH stock (representing approximately 0.828 percent of total corporate equity), and Altman was the registered shareholder to 1,197 shares (representing approximately 0.414 percent of total corporate equity).

To put the instant Application in perspective, a brief procedural overview is appropriate. On January 24, 1992, following acceptance of the guilty plea by the corporate defendants, this Court entered an Order of Forfeiture pursuant to 18 U.S.C. § 1963(e), declaring that all U.S. assets of BCCI, the corporate defendants, were forfeited to the United States. *See* BCCI Docket No. 27. In paragraph 1(c), the Order of Forfeiture specifically stated that the forfeiture applied to "the net proceeds from the future sale or other disposition or transfer of any stock, security or other interest in First American Bankshares, Inc., but not the stock, security or other interest itself."

On June 23, 1992, after having held a public hearing on June 16th, the Court appointed Harry W. Albright Jr. as trustee and sole shareholder of FAC, the parent of FAB. *See* Order of June 23, 1992, *United States v. BCCI Holdings,* 91–CR–0655 (JHG) (D.D.C.) [BCCI Docket No.352] ("Appointing Order"). The Appointing Order, in part, stated:

> "The Trustee shall exercise all rights, titles, powers, and privileges of a shareholder of FAC, including to the extent permitted by applicable law of the state of incorporation of the relevant corporation, the right to exercise exclusively any and all voting rights and other rights or benefits attached to, derived from, or otherwise attributable to the FAC shares."

Appointing Order at 3–4.

The Appointing Order also provided that CCAI—the intermediate holding company between CCAH and FAC—would transfer its

---

Hasan Abedi and Ghaith Pharaon, who have yet to be apprehended. *See* Order of Aug. 26, 1997.

**2.** The corporate defendants, referred to collectively as BCCI, are BCCI Holdings (Luxembourg), S.A.; The Bank of Credit and Commerce International, S.A.; the Bank of Credit and Commerce International (Overseas) Ltd.; and International Credit and Investment Company (Overseas) Ltd.

stock in FAC to the Trustee, thereby cutting off CCAI and its parent, CCAH, from any legal or beneficial ownership in FAC. The Appointing Order specifically provided that the Trustee would be empowered to sell, or cause the sale of, the stock or assets of FAC and its subsidiaries. At the same time, the Appointing Order provided that the Trustee would pay or provide payment for bona fide creditors of CCAH and CCAI before making any distribution of the liquidation proceeds. *Id.* at 6–7. As a consequence, the Appointing Order was the functional equivalent of a dissolution of CCAH and CCAI, which required approval of 75% of the record shareholders of CCAH under Netherlands Antilles law. In issuing the Appointing Order, the Court was aware that because BCCI did not beneficially own 100% of the stock of CCAH, the appointment of a Trustee to hold 100% of the stock of FAC would have a consequential effect on non-forfeited property. No CCAH record shareholder, including Clifford and Altman, objected to the Appointing Order or otherwise challenged this Court's jurisdiction to enter such an order.

The fact that neither Clifford and Altman nor any other CCAH record shareholder challenged the Appointing Order was unsurprising. On May 12, 1992, over a month prior to the public hearing of June 16, 1992, the United States had submitted to CCAH shareholders, which included Clifford and Altman, the proposal which, in all material respects, became the Appointing Order. By an affirmative vote of 79%, CCAH record shareholders, including Clifford and Altman (representing only 1.243% of the voting stock), approved the proposal.[3]

While the Appointing Order provided for the payment of "bona fide debts of FAB,

FAC, CCAI and CCAH as are required by binding contract or law" prior to the forfeiture of proceeds to the United States, *see* Appointing Order at 6–7, it did not provide a specific mechanism for resolving disputed claims.[4] The Appointing Order merely provided that any proceeds not forfeited to the United States would be paid, pursuant to court order, to "the parties entitled to that property." *Id.* at 7–8. In the Order of August 19, 1993, the Court clarified the Appointing Order by stating:

> The phrase "such bona fide debts of FAB, FAC, CCAI and CCAH as are required by binding contract or law to be paid," appearing on page 7 of the Order Appointing Trustee means "such debts as are valid, binding and legally enforceable under normal principles of indebtedness." The Trustee may raise affirmative defenses recognized under normal principles of commercial law in response to claims made by creditors seeking proceeds from the sale or other disposition of First American shares or assets.

Order of August 19, 1993, at 15 [BCCI Docket No. 909].

On June 10, 1994, the Trustee filed a Notice of Sale, which advised the Court and provided notice to all parties that the sale of FAB's assets were complete, and that more than $460 million had been realized from the sale.[5] *See* BCCI Docket No. 1205. And, pursuant to the Appointing Order, the Federal Reserve and the United States filed a report on July 11, 1994, which indicated 61.156% of the capital stock of CCAH was owned or controlled by BCCI and its nomi-

---

**3.** Clifford and Altman concede their affirmative votes, but contend that they relied upon "representations and assurances" contained in a memorandum of the Federal Reserve which stated that, other than the shares of CCAH owned or controlled by BCCI, "[t]he Trustee will then seek court approval to distribute the portion of the proceeds *not* claimed by the United States to those CCAH shareholders who have a beneficial ownership of their CCAH shares." Clifford & Altman's Application at 9 (citing Federal Reserve Board of Governors Statement to the CCAH Shareholders, Summary of Proposed Trust Order at 4 (Apr. 20, 1992)) (emphasis in summary).

**4.** Of course, any disputes as to the entitlement of the proceeds from the sale of any CCAH stock that ultimately was to be forfeited to the United States could be resolved only through the third-party petition procedures outlined in 18 *U.S.C.* § 1963(*l*).

**5.** Given that the Federal Reserve had initially estimated FAB's liabilities to exceed its assets by approximately $300 million, the $460 million gain achieved by the Trustee was widely recognized as remarkable.

nees, and such amount was therefore subject to forfeiture.[6] *See* BCCI Docket No. 1216.

On July 1, 1994, the Court–Appointed Fiduciaries for BCCI filed suit against Clifford and Altman (among others). *See BCCI Holdings v. Clifford, et al.,* Civ. A. No. 94–1461(JHG) (D.D.C.). Among the allegations lodged against Clifford and Altman in the complaint are claims of fraudulent conduct in connection with purchase of the CCAH stock, the proceeds of which Clifford and Altman seek through the instant Application. *See* Compl. ¶¶ 66–86. Additionally, the plaintiffs in *BCCI Holdings v. Clifford* aver that Clifford and Altman's purchase of their debentures was part and parcel of their fraudulent scheme to purchase shares in CCAH without exposing themselves to any commercial risk. *Id.* ¶ 87. The plaintiffs also contend that Clifford and Altman violated their ethical obligations to their client, BCCI, exposing themselves to the remedy of disgorgement of legal fees. *Id.* ¶¶ 97–103. (The Court has denied the defendants' motion to dismiss in this action, and the parties are currently engaged in discovery.)

On December 21, 1994, following a public hearing on December 19th, the Court granted the United States' motion for an order of forfeiture of 61.156% of the CCAH stock, and this Court issued an order setting forth the procedures for completing the liquidation of First American and its affiliates and for distributing the proceeds of the liquidation. Order of Dec. 21, 1994 ("Procedural Order") [BCCI Docket No. 1328]. The Procedural Order required that the liquidation proceed in accordance with state law, with all due notice and publication procedures, and it provided for the creation of reserves for disputed creditor claims pending resolution of such claims in a court of competent jurisdiction. *See id.* ¶¶ 5(a), 7(iii), 9. The Procedural Order acknowledged the rights of creditors to file civil actions to enforce their claims, and it authorized FAB, FAC, and the Trustee to maintain reserves until final disposition of those actions. The Procedural Order does not, by itself, establish any summary procedures for litigating disputed creditor claims in the context of the criminal case.

With respect to non-forfeited liquidation proceeds, the Procedural Order established a mechanism to protect the rights of all competing claimants pending the resolution of disputes as to the entitlement of the liquidation proceeds. In relevant part, the Procedural Order provides:

> the Trustee shall apply to this Court for authority to transfer the amount remaining in the Trustee Suspense Account [i.e., the amount attributable to the liquidation of CCAH and its subsidiaries] to the persons determined by this Court to be entitled thereto; *provided* that *if the right of any person* other than the United States or the New York Fed *to receive a portion of the Trustee Suspense Account is contested* in, or as a result of, any Proceeding pending or claim asserted at the time the Trustee makes a transfer to the United States and the New York Fed, *the amount* that otherwise would be transferred to such person *shall be transferred by the Trustee to the Court Registry Investment System, or as otherwise directed by the Court, pending the outcome of such Proceeding or resolution of such contested claim.*

*Id.* ¶ 12 (emphasis added).

On April 14, 1995, Clifford and Altman filed a petition pursuant to 18 U.S.C. § 1963(*l*), seeking to protect their claims as CCAH shareholders to the proceeds of the liquidation. *See* BCCI Docket No. 1430. On May 10, 1995, pursuant to a stipulation approved by the Court, Clifford and Altman withdrew their petition. *See* BCCI Docket No. 1442 ("Stipulated Withdrawal"). The stipulation provided the United States' acknowledgment that Clifford and Altman were "registered shareholders of 2,395 and 1,197 CCAH shares, respectively, and that these shares [we]re not subject to forfeiture by the United States." Stipulated Withdrawal at 1. In this stipulation, Clifford and Altman stated that they owned these shares. *Id.* However, while the United States did not concede Clifford and Altman's assertion of ownership,

---

**6.** Although the United States only claimed a portion of the liquidation amount of the CCAH stock on this date (June 11, 1994), the Applicants waited approximately two and a half years before contending that the Trustee lacked authority to hold the non-forfeited balance.

it did recognize that their claim against First American would not be adversely affected by the withdrawal of their petition under Section 1963(*l* ). *Id.* at 2.[7]

On November 13, 1995, Clifford and Altman filed a Motion for Limited Intervention to obtain access to materials filed under seal in accordance with the Procedural Order. *See* BCCI Docket No. 1546. In denying their motion, this Court determined, *inter alia*, that Clifford and Altman had waived their objections to the Procedural Order because they had actual notice of the proposed order, yet failed to object in a timely manner. *See supra* at 2.

On or about November 21, 1996, as required by the Procedural Order, the Trustee filed a proposed Distribution Plan, which implements the provisions of the Procedural Order. In relevant part, the Trustee advised the Court that, if approved, 1.243% of the liquidation proceeds would be placed in escrow pending disposition of the competing claims that had been asserted against those proceeds in ongoing proceedings. Additionally, the Trustee advised the Court that

CCAH has four debentures issued and outstanding:

\* \* \* \* \* \*

The Clifford debenture will not be paid. The Trustee has informed Mr. Clifford that this debenture is not legally enforceable under normal principles of commercial law applicable to such indebtedness. *See* Clarification of Order Appointing Trustee, a copy of which is attached as Exhibit 7, at p. 15. Accordingly, in accordance with the Procedural Order, the Trustee will continue to maintain in the CCAH Claim Reserve Account the amount of principal and accrued interest shown on the CCAH Reserve List in respect of the Clifford Debenture. This amount will be maintained by the Trustee until (a) the expiration of the applicable statute of limitations on the pay-

ment of the Clifford Debenture or (b) the final disposition (as defined in the Procedural Order) of any action or claim asserted by Mr. Clifford in respect of the Clifford Debenture, whichever occurs first, or until otherwise ordered by the Court.

\* \* \* \* \* \*

The Altman debenture will not be paid. The Trustee has informed Mr. Altman that this debenture is not legally enforceable under normal principles of commercial law applicable to such indebtedness. *See* Clarification of Order Appointing Trustee, Exh. 7, p. 15. Accordingly, in accordance with the Procedural Order, the Trustee will continue to maintain in the CCAH Claim Reserve Account the amount of principal and accrued interest shown on the CCAH Reserve List in respect of the Altman Debenture. This amount will be maintained by the Trustee until (a) the expiration of the applicable statute of limitations on the payment of the Altman Debenture or (b) the final disposition (as defined in the Procedural Order) of any action or claim asserted by Mr. Altman in respect of the Altman Debenture, whichever occurs first, or until otherwise ordered by the Court.

Trustee's Application for Approval of Distribution Plan at 16–17.

The Trustee further advised the Court that Clifford and Altman's rights to the value of the CCAH shares were being contested by the Federal Reserve as well as by the Court-Appointed Fiduciaries of BCCI. *Id.* at 19 (citing *BCCI Holdings v. Clifford, et al.*, Civ. A. No. 94–1461(JHG) (D.D.C.) and *In re Clifford and Altman*, Docket Nos. 92–080–EI1 (Fed.Res.Bd., Feb. 2, 1995)). Subject to further order of this Court and pending the outcome of the two referenced proceedings, the Trustee would transfer into escrow, under the Distribution Plan (if approved) and pursuant to paragraph 12 of the Procedural Order, the amount claimed by Clifford and Altman.[8]

---

7. Although the United States agreed in April 1995 that the 1.243% of the liquidation proceedings representing the sale of CCAH stock registered in Clifford and Altman's names were not subject to forfeiture, the Applicants waited over a year and a half before complaining that the

Trustee lacked authority to hold the non-forfeited property.

8. The Trustee had advised Clifford and Altman by separate correspondence that the debentures would not be paid because they were "not legally enforceable under normal principles of commer-

■ On November 25, 1996, the Court approved the Distribution Plan. *See* Docket No. 1766. Two days later, Clifford and Altman raised objections to the escrow provisions set forth in both the Procedural Order and the Distribution Plan. *See* Clifford & Altman's Application For Leave to Object to Trustee's Plan of First Distribution Under the Procedural Order at 7 [Docket No. 1768] ("Clifford and Altman respectfully request that the Court allow them until December 20, 1996, to file formal written objections to Mr. Albright's proposed distribution plan, along with supporting affidavits and other materials, as necessary."). The Court then set a briefing schedule on Clifford and Altman's filing, *see* Order of Dec. 4, 1996 [Docket No. 1770]. And, on December 18, 1996, having reviewed the parties' preliminary positions, the Court amended the order approving the Distribution Plan, staying implementation of only that portion which affected the proceeds sought by Clifford and Altman. *See* Docket No. 1781. Because of this Order, the provision authorizing the transfer into escrow of the proceeds sought by Clifford and Altman was stayed, and therefore the Trustee never transferred such proceeds. The Court then ordered further briefing. The Court has since reviewed the voluminous additional filings offered by the parties, and the matter is now ripe for resolution.[9]

While outlining the history of this matter and the procedural posture of the instant claim has required a rather lengthy exposition, resolving the merits of Clifford and Altman's Application does not. First, they argue that the Court lacks subject matter

jurisdiction to seize "their property" and order its distribution pursuant to the Procedural Order, because the relevant statute, 18 U.S.C. § 1963(e), "is strictly limited to the property of criminal defendants that is forfeited to the United States." Clifford & Altman's App. at 2 & 18–25. Second, they contend that the Court's approval of that portion of the Distribution Plan affecting "their property" denied them due process under the Fifth Amendment to the Constitution.[10] *Id.* at 3–4, & 25–32. Third, they assert that the Trustee's determination that their convertible debentures are not bona fide debts is contrary to this Court's Order of August 19, 1993. *Id.* at 32–40. As relief, despite their contention that the Court lacks jurisdiction and in spite of the competing claims asserted in at least two separate proceedings, the Applicants request that the Court order the Trustee to distribute the contested sums to them. *Id.* at 41.

■ As to the Court's authority, 18 U.S.C. § 1963(e) provides a broad statutory grant to take "any" action necessary to protect the interests of the United States in the property ordered forfeited. And, the statute plainly provides expenses may be incurred "to protect the interests of the United States *or third parties.*" Although non-forfeitable property may be affected by an order issued pursuant to Section 1963(e), it does not necessarily follow that such a court order is *ultra vires. See, e.g., United States v. Regan*, 858 F.2d 115 (2d Cir.1988).

cial law applicable to such indebtedness. The debenture[s] [were] purchased as part of the conspiracy to conceal and maintain BCCI's illegal ownership of CCAH and First American [and since] the transaction by which [they] acquired the debenture is unlawful because th[ose] acquisition[s] were made with the proceeds of illegal activity." Letter to Robert A. Altman from Harry W. Albright Jr. (Nov. 21, 1996); Letter to Clark M. Clifford from Harry W. Albright Jr. (Nov. 21, 1996).

**9.** Clifford and Altman have also filed a Request for Expedited Hearing and Ruling, see Docket No. 21, filed March 7, 1997, and a Renewed Request for Expedited Hearing and Ruling and Response to Trustee's Plan of Third Distribution Under the Procedural Order, see Docket No. 22,

filed July 16, 1997. To the extent these filings constitute requests for oral argument, they will be denied. Whether to hold oral argument on a motion is a matter committed to the Court's discretion under Local Rule 108(f), and the Court has determined here that while the filings are voluminous, oral argument is unnecessary to resolve those disputed issues that require resolution. To the extent these filings constitute requests for a trial-like evidentiary hearings, they will also be denied since due process does not require a hearing of that nature.

**10.** The provisions providing for the transfer of the disputed funds into an escrow account ("CRIS") were never implemented by the Trustee pursuant to this Court's Order of December 18, 1996, amending the order of Nov. 25, 1996.

Under the unique circumstances of this case, in which BCCI and others relied on layers upon layers of bank holding companies and the use of nominees to conceal the true ownership interests in banks as part of a massive worldwide fraudulent scheme, this Court concluded that the appointment of the Trustee was necessary to protect the interests of the United States. And, as reflected by the Fifth Round of Forfeiture (and possibly more rounds in the near future), it has taken years to untangle BCCI's tangled financial affairs in an attempt to determine the full extent of the interests that are subject to forfeiture. CCAH played a central role in BCCI's scheme in the United States to acquire First American, and, after careful consideration of the Joint Motion of the United States, the Court–Appointed Fiduciaries, the District Attorney for New York County and the Board of Governors of the Federal Reserve,[11] the Trustee was appointed in this case to enable the corporate defendants to divest themselves of their interests in CCAH and its subsidiaries, and to carry out the divestiture order issued by the Board of Governors of the Federal Reserve. *See* Appointment Order at 2. The United States simply could not realize its interests until those assets were liquidated, and the appointment of the Trustee was necessary and essential to perform such liquidation.

Incident to the appointment of the Trustee was the entry of orders establishing the procedures by which the Trustee would perform his mandate, including the procedural mechanisms to distribute the residual funds that would ultimately be determined not to be subject to forfeiture. Recognizing that the ownership of those residual funds might be subject to competing claims, this Court's Procedural Order simply established procedures, implemented by the Trustee, to ensure that the interests of all parties were protected pending resolution of the merits of those claims by courts of competent jurisdiction. *See, e.g.,* Appointment Order at 2 ("appointment of the Trustee will afford third parties

a procedure for determining their rights, if any, to the proceeds of the sale or other disposition of FAC shares or assets"); Procedural Order ¶ 12 (providing for the transfer of the amounts of contested claims pending the outcome of proceedings pending at the time of distribution).

Section 1963 does impose clear jurisdictional limits, but this Court's orders have remained well within those limits. For example, the third-party petition procedures of Section 1963($l$) are restricted to claims made against property forfeited to the United States, and the Procedural Order was explicitly drafted to acknowledge that requirement. Contrary to Clifford and Altman's contention, however, this limitation does not mean that the Court must order the distribution of non-forfeitable assets to one claimant where those assets are subject to colorable competing claims. The authority cited by the Applicants is inapposite and, to the extent that authority may be construed to require the Court to order such distribution, the cases cited are neither persuasive nor binding.

■ Similarly without merit is the claim of a due process violation purportedly stemming from an order which has never been implemented and proceeds which have neither been seized by the government nor forfeited to the United States. Accepting that Clifford and Altman are among those with a property interest in the proceeds from the sale of 1.243% of the CCAH capital stock and the debentures, the core of the due process required by the Constitution is that persons be provided notice and an opportunity to be heard before being deprived of a property interest by government action. *See Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314–15, 70 S.Ct. 652, 657–58, 94 L.Ed. 865 (1950); *see also United States v. James Daniel Good,* 510 U.S. 43, 53, 114 S.Ct. 492, 500–01, 126 L.Ed.2d 490 (1993); *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985); *Fuentes v. Shevin,* 407

11. *See* Docket No. 298 (submitted by Ira Raphaelson, Special Counsel for Financial Institution Fraud, U.S. Department of Justice on behalf of William P. Barr, Attorney General; Robert M. Morgenthau, District Attorney for the County of New York; J. Virgil Mattingly, Jr., General Counsel for the Board of Governors of the Federal Reserve System; and Michael Nussbaum, Counsel for the Court–Appointed Fiduciaries).

U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972); *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 339, 89 S.Ct. 1820, 1821–22, 23 L.Ed.2d 349 (1969). Clifford and Altman argue that transferring the funds to escrow—the court registry—would constitute government action that adversely affects their interests because it would deprive them of access to "their property." Nevertheless,. the record makes clear that the Applicants have received, or will receive, all of the process that is due, or will be due, before a termination decision is made regarding title to the property at issue. *See Loudermill,* 470 U.S. at 542–43, 105 S.Ct. at 1493–94.

▮ "Procedural due process imposes constraints upon governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). While some form of a hearing is required "before an individual is finally deprived of a property interest," *id.,* due process is a flexible concept that calls only for such "procedural protections as the particular situation demands." *Id.* The Constitution simply does not inflexibly demand that a hearing closely approximating a judicial trial always be provided before a governmental decision is taken that adversely affects an individual's property interests. *Id.* at 333, 96 S.Ct. at 902; *see also Loudermill,* 470 U.S. at 545, 105 S.Ct. at 1495; *Fuentes,* 407 U.S. at 82, 92 S.Ct. at 1995. *See generally* Tribe, American Constitutional Law § 10–13, at 539 (1978). Although the funds at issue here have not been seized, in balancing the competing property interests of claimants to property, the law sanctions pre-judgment seizure where, as here, claimants have had an opportunity to present their claims through some type of a fair hearing. *See Fuentes,* 407 U.S. at 82, 92 S.Ct. at 1995 ("due process tolerates variances in the *form* of a hearing 'appropriate to the nature of the case' ") (quoting *Mullane,* 339 U.S. at 313, 70 S.Ct. at 657; emphasis added in *Fuentes* ).

The specific procedural orders challenged by Clifford and Altman authorize the transfer of disputed property to a neutral entity—the court registry—pending the conclusion of ongoing proceedings litigating the substantive issues upon which the ownership dispute turns. Once those issues are resolved on the merits, the Court's orders provide for distribution to the proper third-party owner. These procedural orders, which the Applicants now assail, were tailored to provide all interested parties with a procedure that guarantees to each a fair process before *any* person is deprived of a property interest. The procedural orders of the Court were crafted to avoid the "substantively unfair or mistaken deprivations of property," *Fuentes,* 407 U.S. at 81, 92 S.Ct. at 1994; *see also James Daniel Good,* 510 U.S. at 53, 114 S.Ct. at 500–01, that might otherwise result. The Applicants claim a property interest; so do others. The procedural orders issued, and to be issued vacating the applicable portion of the December 18th Order, by this Court merely preserve the *status quo* and protect *all* parties' interests pending determination at ongoing or future proceedings. *See generally* Tribe, *supra* § 10–9, at 522 (1978) ("It is up to the Court ... to determine the balance between competing property interests of creditors and debtors in terms of the process due to resolve the controversy between them.") (citing *Fuentes* as judicial basis for "striking that balance.").

Moreover, the procedures ordered by this Court are fully consistent with *Mathews'* balancing calculus. Such procedures minimize the risk of an erroneous deprivation while respecting *all* of the private interests asserted to the property at issue. *Id.* at 335, 96 S.Ct. at 903. The government interest at stake is, of course, merely to ensure that the non-forfeitable property is distributed to the rightful owner without adding additional and unnecessary administrative burdens. The Procedural Order, and the Court's orders issued prior to the Procedural Order as well as those issued pursuant thereto, were carefully tailored to balance these competing interests.

The record makes abundantly clear that the Applicants have received constitutionally adequate process prior to implementation of the Procedural Order and prior to the date in the future when the Trustee will transfer the

property at issue here into an escrow account pursuant to paragraph 12 of the Procedural Order. *See Fuentes,* 407 U.S. at 80–81, 92 S.Ct. at 1994–95. The Applicants have had repeated notice and several opportunities to be heard: *inter alia,* when the Trustee was appointed on June 23, 1992 (shortly after Clifford and Altman joined the majority of CCAH shareholders in approving the proposal which, in material respects, became the Appointment Order); before the Appointment Order was clarified by this Court on August 19, 1993; when the Procedural Order was debated on December 19, 1994; and through their voluminous filings before this Court in contesting implementation of the Trustee's Distribution Plan.

Through the instant Application, and the extended briefing and numerous exhibits which followed, the Court has considered the parties' arguments and has independently reviewed the basis for the Trustee's determination that the disputed proceeds should be placed in escrow pending the conclusion of ongoing litigation on the merits of the complex matters incident to ownership of this property. Such consideration has served as an initial check against a mistaken decision— "essentially, a determination of whether there are reasonable grounds" to justify the Trustee's conclusion. *Loudermill,* 470 U.S. at 545–46, 105 S.Ct. at 1495; *see North Georgia Finishing Inc. v. Di–Chem, Inc.* 419 U.S. 601, 607, 95 S.Ct. 719, 722–23, 42 L.Ed.2d 751 (1975) (invalidating state garnishment statute because of lack of hearing procedure to demonstrate at least probable cause to support garnishment). The exhibits attached to the Joint Motion provide an ample evidentiary basis to support the Trustee's finding that Clifford and Altman's claims are not bona fide. While Clifford and Altman have been afforded an opportunity to dispute this evidentiary basis and show that the Trustee's finding is not reasonable, their arguments have not yet been persuasive. *Compare Connecticut v. Doehr,* 501 U.S. 1, 9, 111 S.Ct. 2105, 2111–12, 115 L.Ed.2d 1 (1991) (noting difficulty in determining probable cause where only one side has presented its version of the facts). Pursuant to paragraph 12 of the Procedural Order, the Trustee has recommended transferring the disputed sums to

escrow and, based on the parties' evidence and arguments thereon, the Court determines that the factual basis underlying his recommendation is sufficient.

Of course, the Court's initial assessment neither indicates who will ultimately prevail on the disputed issue, *see Doehr,* 501 U.S. at 20, 111 S.Ct. at 2117, nor does it terminate *any* of the competing claims to the property in dispute. While the Applicants are entitled to due process, the Court cannot accept that the Constitution "guarantee[s] to [them] the use and possession of the [contested amounts] until all issues in the case [a]re judicially resolved after full adversary proceedings ha[ve] been completed." *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 607, 94 S.Ct. 1895, 1900, 40 L.Ed.2d 406 (1974). In sum, the process afforded the Applicants before the property will be transferred to CRIS, to be held in escrow, has been constitutionally sufficient; the *status quo* will be preserved while the competing claims to this property are adjudicated in collateral proceedings. *See Mathews,* 424 U.S. at 334, 96 S.Ct. at 902–03 (citing *Fuentes,* 407 U.S. at 96–97, 92 S.Ct. at 2002–03). The Court's Procedural Order simply ensures that *all* who claim an interest in this property are entitled to, and will receive, a meaningful hearing on the merits of their claims before a final decision is made depriving someone of those property rights. *See Mathews,* 424 U.S. at 333–34, 96 S.Ct. at 901–03. The due process claim will therefore be rejected.

■ Finally, Clifford and Altman claim that the Trustee has violated the orders of this Court by applying equitable rather than legal standards in concluding that Clifford and Altman's interests in the CCAH stock and debentures were not bona fide, and thus they should not be paid with liquidation proceeds. While the Court takes no position on the underlying merits, it is clear that the Trustee has, in fact, relied upon valid legal authority and asserted defenses that are recognized under normal principles of commercial law. Moreover, while not dispositive of the merits, his conclusion is based on sufficient evidence, as reflected in the attachments to the Joint Opposition. Notably, the Trustee's determination parallels at least of

some of the allegations vigorously disputed by the parties in BCCI *Holdings v. Clifford,* Civ. A. No. 94–1461, which is currently in discovery before this Court.

The extensive briefing and voluminous exhibits filed by the parties regarding the factually complex matters raised with regard to the CCAH stock proceeds and the debentures at issue here make clear that a miscellaneous case (filed in connection with an underlying criminal case) is not the proper judicial vehicle to resolve third-party disputes regarding non-forfeited property. The Procedural Order correctly established the process by which the *status quo* has been preserved pending the conclusion of litigation in appropriate fora. It is clear that the mechanism of a miscellaneous case filed under Local Rule 307.1 is not an appropriate means to consider factually complex matters that are currently at issue in collateral litigation. The Applicants are, as the Trustee has invited them to do, free to challenge the Trustee's determination as to the debentures and CCAH stock in state court or in a properly filed Federal civil action, which could be, if appropriate, consolidated with other ongoing litigation.

Accordingly, it is hereby

**ORDERED** that Application filed by Clark M. Clifford and Robert A. Altman pursuant to Local Rule 307.1 is DENIED; it is

**FURTHER ORDERED** that this Court's Order of December 18, 1996, staying transfer of the unforfeited property is VACATED. As proposed in the Trustee's Distribution Plan, such property shall be transferred to the Court Registry Investment System pending conclusion of litigation that is determinative of the underlying ownership interest or as further ordered by this Court; and it is

**FURTHER ORDERED** that this miscellaneous action is CLOSED.

IT IS SO ORDERED.